This document was signed electronically on September 30, 2016, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: September 30, 2016



ALAN M. KOSCHIK
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

In re )
    ) Case No. 11-53273
STE-BRI ENTERPRISES, INC., )
    ) Chapter 7
Debtor. )
    )
    ) Judge Alan M. Koschik
    )

**MEMORANDUM DECISION REGARDING TRUSTEE'S FINAL REPORT
AND RELATIVE PRIORITY OF CHAPTER 7 TRUSTEE FEES,
PRE-CONVERSION UNITED STATES QUARTERLY FEES, AND
<u>PRE-CONVERSION CHAPTER 11 PROFESSIONAL FEES</u>**

Before this Court is the chapter 7 trustee's final report, a matter that is typically routine and requires little legal analysis. In this case, however, the relative priorities of certain administrative expense claims and bankruptcy fees in the context of a case converted from chapter 11 to chapter 7 caused the Court to raise, *sua sponte*, questions about those priorities that are addressed in this Memorandum Decision.

## JURISDICTION AND VENUE

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## PROCEDURAL HISTORY

This case was originally filed as a chapter 11 reorganization case by Debtor Ste-Bri Enterprises, Inc. dba The 356th Fighter Group Restaurant (the "Debtor") on August 25, 2011. For reasons irrelevant to the matters now before the Court, the case was converted to chapter 7 upon the voluntary motion of the Debtor on March 3, 2014. Trustee Dynele L. Schinker-Kuharich (the "Trustee") was then appointed the chapter 7 Trustee of the Debtor's estate.

Pursuant to the Trustee's Final Report, which was filed on October 23, 2015 (Docket No. 245) (the "Final Report"), it appears that at the time the case was converted, the Office of the U.S. Trustee for Region 9 (the "UST") had an outstanding claim of $9,745.73 for quarterly chapter 11 fees due from the Debtor as a result of the Debtor's distributions while a debtor-in-possession pursuant to a fee structure provided for by 28 U.S.C. § 1930(a)(6) (the "UST Fee"). In addition, it appears that Timothy Hefty, CPA, the accountant employed by the Debtor as chapter 11 debtor-in-possession (the "Accountant"), held a chapter 11 administrative expense claim for professional fees in the amount of $2,300 ("the Accountant's Fee").[1] Finally, the Final

---

[1] On August 30, 2013, the Court entered an Order allowing professional fees to the Accountant in the amount of $6,300. The record is unclear as to how or why the claim was reduced to $2,300 in the Trustee's Report. Presumably, a portion of the fee was paid to the Accountant by the Debtor while still a debtor-in-possession prior to conversion. However, the record is unclear on that point. The Final Report does not disclose any interim payments on the Accountant's claim, but that portion of the Trustee Report may only refer disbursements during the course of the chapter 7 case after the conversion. The Court makes no finding about how the Accountant's allowed claim of $6,300 has been reduced to $2,300, but it nevertheless assumes that that aspect of the Final Report is accurate.

Report includes a chapter 7 trustee fee due to the Trustee in the amount of $2,628.44 (the "Trustee's Fee"), which correctly states the Trustee's statutory commission due pursuant to 11 U.S.C. §§ 326(a) and 330(a)(7) and the liquidated cash value of the estate available for distribution to creditors in this chapter 7 case. The Trustee's Fee stated in the Final Report matches the fee requested by the Trustee in her original application for compensation filed September 30, 2015 (Docket No. 244) (the "Trustee's Original Application"). The Trustee also sought reimbursement of expenses of $248.45 in the Trustee's Original Application and that item is included in the Final Report.

The fees described above constitute all of the claims entitled to priority pursuant to 11 U.S.C. § 507(a)(2), which constitutes the highest priority of claims in this bankruptcy case.[2] Unfortunately, these fees total $14,922.62, well in excess of the cash in the Debtor's estate, which totals only $7,025.31. As a result, this case is administratively insolvent and the junior priority claims and general unsecured claims will receive nothing in this liquidation case. Moreover, there are insufficient assets to pay all of the administrative fees and the UST fees in full. The apportionment of the limited funds to the fees and expenses is the issue before the Court.

The Final Report proposes treating the Trustee's Fee and the UST Fee with equal priority, senior to the Accountant's Fee, which is a chapter 11 administrative expense claim. As a result, the Trustee proposed paying $1,462.90 on account of her Trustee Fee, $138.28 on account of her reimbursable expenses, and $5,424.13 to the UST on account of the UST Fee. This amounts to a dividend of approximately 56 percent on those claims. The Trustee's Final Report proposed paying nothing on account of the Accountant's Fee.

---

[2] As a corporate, and not an individual debtor, the Debtor necessarily has no domestic support obligations, claims that would be entitled to senior treatment pursuant to 11 U.S.C. § 507(a)(1).

On January 26, 2016, the Court noticed a hearing on the Final Report.[3] The hearing was held on February 3, 2016, at which time the Court questioned whether the Trustee Fees should be senior to both the UST Fee and the Accountant's Fee because the latter were both claims that arose before the conversion. *See* 11 U.S.C. § 726(b). Both the Trustee and the UST were invited to brief the issue.

The UST filed his response, styled as a Comment, on February 8, 2016 (Docket No. 250) (the "Comment"), in which he argued that the priorities used by the Final Report were accurate. After reviewing the Comment, the Court set a further telephonic hearing on February 24, 2016, at which time the Court asked a further question: whether the statutory amendments to the priority statute in 11 U.S.C. § 507(a)(1) and (2) pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 199 Stat. 23, enacted April 20, 2005 ("BAPCPA") affected the relative priorities of chapter 7 trustee fees, chapter 11 professional fees, and UST quarterly fees. The UST filed his supplemental comment in response to this question on March 3, 2016 (Docket No. 251) (the "Supplemental Comment"), in which he argued that the amendments in BAPCPA did not alter the relative priorities of the claims in this case. The Court then took the matter under advisement.

---

[3] The following day, January 27, 2016, the Trustee filed an amended application for compensation (the "Trustee's Amended Application") in which she reduced her requested compensation to fees of $1,462.90 and expenses of $138.28 -- exactly matching the pro-rated dividend her Final Report proposed be paid to her on account of the Trustee's Original Application. A chapter 7 trustee's fees are statutory commissions and not subject to debate. They are a function solely of the statutory fee structure and the amount of assets being administered. Therefore, there is no reason to believe that the fees and expenses in the Trustee's Original Application were in error or that the Trustee's Amended Application was intended to correct such an error. Rather, it appears that the Trustee modified her Application for Compensation to comport with the amounts the Trustee actually expected to recover on account of the Trustee's Original Application. For purposes of this decision, the Court will assume that the actual chapter 7 administrative expense claims of the Trustee are those that were stated in the Trustee's Original Application and the Final Report.

4

## LEGAL ANALYSIS

A.  **Statutory Framework.**

The relative priorities of the Trustee's Fee, the Accountant's Fee, and the UST Fee in this administratively-insolvent bankruptcy case depend on a careful analysis of Sections 507(a)(1) and (2), as well as Section 726(b) of the Bankruptcy Code.

Prior to BAPCPA, Section 507(a)(1) provided that the unsecured expenses and claims of a bankruptcy estate would have priority as follows:

> "First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28."

11 U.S.C. § 507(a)(1)(prior to October 17, 2005, the effective date of BAPCPA). This provision accorded first priority status among all unsecured bankruptcy claims to both administrative claims and bankruptcy fees, which includes UST quarterly fees provided for specifically by 28 U.S.C. § 1930(a)(6).

Meanwhile, Section 726(b) provides, both before and after BAPCPA, that all claims within a given priority level, including a first priority found originally in Section 507(a)(1), be paid pro rata if there were insufficient funds to pay all such claims in full. Section 726(b) provides a further qualification to the pro rata distribution rule regarding administrative expense claims allowed under Section 503(b) in the context of a conversion to chapter 7 from either chapters 11, 12, or 13. The statute reads, in pertinent part:

> ". . . except that in a case that has been converted to this chapter under Section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter [i.e., chapter 7] after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion . . . ."

11 U.S.C. § 726(b). The common, albeit not perfectly precise, understanding of this provision is, in the context of a conversion from chapter 11 to chapter 7, that the cost of an administration in a

chapter 7 must be paid in full before the chapter 11 administrative expense claims receive any payment at all. This understanding gave rise to the Court's inquiry at the first hearing about the decision to treat the UST Fee in *pari passu* with the Trustee's Fee and senior to the Accountant's Fee, which is a chapter 11 administrative expense claim.

BAPCPA left Section 726(b) largely untouched, but did modify Section 507's priority structure. Specifically, the provision that had been Section 507(a)(1) cited above was demoted to Section 507(a)(2). The new Section 507(a)(1) addresses domestic support obligations previously assigned a lower priority, in a slightly different form, in Section 507(a)(7). This paragraph of the subsection is now broken into three separate subparagraphs, the first two of which concern domestic support obligations owed to either a spouse or child of the debtor, or to such child's parent or guardian, 11 U.S.C. § 507(a)(1)(A), and identical claims that have been assigned by those protected parties or pursuant to nonbankruptcy law to a governmental unit. 11 U.S.C. § 507(a)(1)(B). However, in addition to the domestic support obligation priority, the new Section 507(a)(1), which is now senior to administrative expenses and bankruptcy fees, also includes the following subparagraph:

> "If a trustee is appointed or elected under Section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee are allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of [the domestic support obligations], to the extent that the trustee administers assets that are otherwise available for the payment of such claims."

11 U.S.C. § 507(a)(1)(C). This provision led to the question raised by the Court at a second hearing on the Final Report as to whether a chapter 7 trustee's fee or the professional fees and expenses for her employed professionals became senior to all other administrative expenses and bankruptcy fees *in all circumstances*, regardless of conversion and the proper application of Section 726(b), including Section 726(b)'s preference for chapter 7 expenses over pre-conversion expenses.

6

The questions faced by the Court are: (1) do the amendments to Section 507 in BAPCPA mean that the Trustee's Fee is governed by Section 507(a)(1)(C) in this case and therefore would be senior to the UST Fee and Accountant's Fee now clearly placed in second priority position in Section 507(a)(2); and (2) how does Section 726(b) affect UST fees, which are imposed pursuant to chapter 123 of title 28 -- specifically 28 U.S.C. § 1930(a)(6) -- relative to chapter 7 and chapter 11 administrative expense claims when that section gives the chapter 7 administrative expense claims a priority over chapter 11 administrative expenses, but does not mention the effect on bankruptcy fees authorized by chapter 123 of title 28?

**B.      BAPCPA's Effect on the Priority of Administrative Expense Claims.**

The first question is answered easily. As explained by the UST in his Supplemental Comment, the apparent elevation of certain administrative expense claims to the highest priority, even above domestic support obligations, pursuant to Section 507(a)(1)(C), is limited to those cases in which domestic support obligations exist. That subparagraph limits the superpriority accord to certain administrative expenses "to the extent that the trustee administers assets that are otherwise available for the payment of [domestic support] claims." 11 U.S.C. § 507(a)(1)(C). If the trustee does not administer assets for the benefit of domestic support obligations, such as any case in which there are no such obligations, including all corporate bankruptcy cases, the superpriority accorded certain administrative expenses related to the Trustee's administration of assets under Section 507(a)(1)(C) does not apply.

This interpretation is supported by the legislative history cited by the UST. *See* HR Report 109-31(1), 59-60, 2005 USCCAN 88, 129. This is also consistent with Collier's understanding. "Section 507(a)(1)(C) provides the trustee with a *limited* right to receive reimbursement with a priority ahead of that granted by sections 507(a)(1)(A) and (B). . . . The

7

purpose of this special priority is to incentivize trustees to administer assets that could be used for payment of [domestic support obligations] and to protect trustees who do so." 4 Collier on Bankruptcy ¶507.03[2] at 507-23 (2016).

The Court notes that the fine contours of how this superpriority should be implemented may raise further issues in cases where domestic support obligations exist. Whether all administrative expense claims relating to a trustee and the compensation and an expense reimbursement for the trustee's professionals are granted superpriority, or whether and to what extent a portion are not, depends on the facts of each case and a more careful interpretation of the statute. However, where as is the case here the Debtor has no domestic support obligations, the priorities established by the new Section 507(a)(1)(C) become irrelevant and the new Section 507(a)(2) has, as a practical matter, the highest priority in the case, leaving all administrative expense claims and bankruptcy fees with the same priority.

Therefore, as urged by the UST, BAPCPA's amendments do not affect the relative priority of the claims at issue in this case.

C. **Section 726(b) Grants a Superpriority to Chapter 7 Administrative Expense Claims and Does Not Subordinate Chapter 11 Administrative Expense Claims, Resulting in Bankruptcy Fee Claims Remaining In *Pari Passu* with Chapter 11 Administrative Expense Claims, Not with Superpriority Chapter 7 Administrative Expense Claims.**

The central issue raised by the Trustee's Final Report in this case is the proper interpretation of Section 726(b)'s provision governing the treatment of administrative expense claims in a case converted to chapter 7 from another chapter.

As previously discussed, it is well-established that administrative expense claims and bankruptcy fees are accorded the same priority level, *see In re Juhl Enterprises, Inc.*, 921 F.2d 800, 802 (8t$^h$ Cir. 1990); *In re Jonick Deli Corp.*, 263 B.R. 196, 198 (S.D.N.Y. 2001); 11 U.S.C. § 507(a)(2)(formerly Section 507(a)(1)), absent any domestic support obligations in the case.

8

The presence of domestic support obligations in a case would cause certain administrative expense claims of a trustee to have a superpriority. *See* 11 U.S.C. § 507(a)(1)(C)(post-BAPCPA). It is also clear that when a case is converted to chapter 7, the chapter 7 administrative expense claims are paid before chapter 11 administrative claims. 11 U.S.C. § 726(b); *In re Jonick Deli*, 263 B.R. at 198. Finally, there is no dispute that for statutory purposes, bankruptcy fees such as the UST Fee at issue here are distinguished from administrative expense claims allowed under Section 503(b), whether such administrative expense claims arise during chapter 11, 7, or any other chapter. *In re Bancroft Laundry Center, Inc.*, 64 B.R. 586, 587 (Bankr. N.D. Ohio 1994) (Speer, J.).

"What the § 726(b) exception does not make clear, however, is whether Chapter 7 administrative expenses also have priority over charges incurred under Chapter 123 of Title 28, quarterly fees. *In re Jonick Deli*, 263 B.R. at 198; s*ee also In re Endy*, 104 F.3d 1154, 1156 (9th Cir. 1997). The Ninth Circuit explains that the origin of this question arises from a statutory amendment in 1986 that added bankruptcy fees to the first priority category, but did not address directly their priority after a chapter 11 case was converted to chapter 7.

> "The courts' struggles in interpreting these statutes stem from a serious congressional omission. Congress added the Chapter 123 fees and charges to section 507(a)(1) when it created the U.S. Trustee's Program in extensive 1986 amendments to the bankruptcy code. Prior to those amendments, the only claims that were given first level priority under section 507(a)(1) were those for section 503(b) administrative expenses. Therefore, the priority given Chapter 7 expenses in the § 726(b) exception sufficed. In the 1986 amendments, Congress added a new first priority claim to section 507(a)(1), but apparently overlooked the need to address that claim's place in the section 726(b) priority scheme."

*Id.* at 1157 (internal citations omitted).

Courts have taken two routes in resolving the question created by this statutory omission. As summarized most recently, but still fifteen years ago, by the District Court for the Southern District of New York, the majority view is that the UST quarterly fees should be paid pro rata

9

with chapter 7 administrative expense claims, despite the fact that the UST quarterly fees arose during the chapter 11 case.  *In re Jonick Deli*, 263 B.R. at 198-99.  Meanwhile, the minority view holds the reverse -- that the bankruptcy fees "should be subordinated to the Chapter 7 administrative expenses and prorated with the Chapter 11 expenses."  *Id.* at 199.  *Jonick Deli* notes that the minority view decisions number only two, *In re Discount Printing*, *Inc.*, 199 B.R. 145 (Bankr. S.D.W.Va. 1995) and *In re Wetmore*, 117 B.R. 201 (Bankr. W.D.Pa. 1990), with a third bankruptcy court decision following the minority view in Arizona having been reversed by the District Court.  *In re Ehrman*, 184 B.R. 362 (D. Ariz. 1995), *reversing* 171 B.R. 683 (Bankr. D. Ariz. 1994).  *See In re Jonick Deli*, 263 B.R. at 199 n.1.  Indeed, the majority includes the only two court of appeals opinions to address the issue, *In re Endy*, 104 F.3d 1154 (9th Cir. 1997) and *In re Juhl Enterprises, Inc.*, 921 F.2d 800 (8th Cir. 1990), and two bankruptcy court decisions from this district, *In re Metro Transportation and Health Referral, Incorporated*, 165 B.R. 832 (Bankr. N.D. Ohio 1994) (Baxter, J.) and *In re Bancroft Laundry Center, Inc.*, 164 B.R. 586 (Bankr. N.D. Ohio 1994) (Speer, J.).  There are no Sixth Circuit appellate decisions addressing this issue.

Notwithstanding the heavy weight of authority, and at the risk of swimming decidedly upstream against the current, the Court here is compelled to follow the so-called minority view.  It does so in reliance on the only reed available to create sense from what was clearly a Congressional omission.  That reed is the plain language of Section 726(b), language that the Court believes the majority view courts misread at a critical juncture of their decisions.

After carefully reading the majority view decisions, the Court observes that each one that analyzes the question in any detail observes -- incorrectly -- that Section 726(b) *subordinates*

chapter 11 administrative expenses to chapter 7 administrative expenses. Having thusly misread the statute, the die is cast so as to lead to what this Court believes is the incorrect result.

The majority view courts treat chapter 11 administrative expenses after conversion as subordinated claims. Because the statute (regrettably) remains silent as to the effect of conversion on bankruptcy fee claims added to the first priority level in 1986, those fees logically remain in *pari passu* with the claims that those courts view as having remained in place: the chapter 7 administrative expense claims. For example, *Juhl Enterprises*, after finding correctly that the bankruptcy fees are not chapter 11 administrative expenses, states that "Section 726(a) places the Trustee's Fee [referring to the UST's quarterly fee] and the § 503(b) administrative expenses on the same footing. But § 726(b) *removes the Chapter 11 § 503(b) expenses from that lofty status*." In re Juhl Enterprises, Inc., 921 F.2d at 803 (emphasis added). Here, the Eighth Circuit reads Section 726(b) as a statute subordinating chapter 11 administrative expense claims while, by silence, leaving bankruptcy fees alone to share equally with chapter 7 administrative expense claims.

The other majority view opinions are similar. "Congress intended to give Chapter 11 administrative expenses a *lower priority* than the other first priority claims under sections 507(a) and 726(a), because Congress said so when it enacted section 726(b)." *In re Endy*, 104 F.3d at 1157 (emphasis added); *In re Jonick Deli*, 263 B.R. at 199 (quoting *Juhl Enterprises* with approval); *In re Metro Transportation*, 165 B.R. at 834 ("Congress chose under § 726(b) *to subordinate* only the § 503(b) expenses from a converted chapter 11 case and not the UST's Chapter 11 fees which are provided for under 28 U.S.C. 1930(a)(6)) (emphasis added); *In re Bancroft Laundry*, 164 B.R. 588 ("Only those claims allowed under Section 503(b) which arise in a case converted under Section 1112 are *excepted from payment* under Section 726(b).")

11

(emphasis added). Each majority view case read Section 726(b) as *subordinating* chapter 11 administrative expense claims, not granting a *superpriority* to chapter 7 administrative expense claims. By framing the statute in this way, it becomes easy to leave the unmentioned bankruptcy fees with the supposedly static, non-moving chapter 7 administrative expense claims.

However, this is not what Section 726(b) says. The Court is cognizant that "[t]he task of resolving the dispute over the meaning of [statutes] begins where all such inquiries must begin: with the language of the statute." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Section 726(b) does not purport to subordinate any claim, either with the word "subordinate" or any other similar word or phrase. Instead, the statute provides that when a case is converted to chapter 7, a chapter 7 administrative expense claim "has priority over the claim allowed under section 503(b) of this title [i.e., an administrative expense claim] under any other chapter of this title . . . ." 11 U.S.C. § 726(b). Congress could have subordinated chapter 11 administrative expenses to chapter 7 administrative expenses, but it did not. Clearly the distinction did not matter when there were only two categories of claims affected, as was the case before the 1986 amendments. However, when Congress added bankruptcy fees to the same priority level of administrative expense claims in the then-current version of Section 507(a)(1), the distinction created by plain statutory language of Section 726(b) had a material effect. All three categories start out equal. When chapter 7 administrative expenses are elevated -- i.e., given a superpriority -- the two remaining categories, chapter 11 administrative expenses and bankruptcy fees, remained behind, relatively but not expressly subordinated. As noted by Collier's, Section 726(b) modifies the priority structure found in Section 507(a) by creating a "*superpriority* of administrative expenses of liquidation

12

proceeding over administrative expenses of predecessor cases under other chapters." 4 Collier's on Bankruptcy ¶507.17 at 507-91 (2016) (emphasis added).

This focus on the precise language of the statute is the basis for the dissent in *Juhl Enterprises*, where Senior Judge Heaney observes that "in my view, Sec. 726(b) simply gives a superpriority to administrative expenses that arise after a conversion to chapter 7." *In re Juhl Enterprises, Inc.*, 921 F.2d at 803-804 (Heaney, J., dissenting) (citing Collier's at ¶ 507.17). This Court agrees.

Several of the majority view opinions also emphasize the importance that the United States Trustee Program be self-funded. By citing to statutes alluding to this policy, these courts suggest that granting UST quarterly fees a higher priority is necessarily the intended result. *See, e.g., In re Endy*, 104 F.3d at 1157; *In re Jonick Deli*, 263 B.R. at 199; *In re Metro Transportation*, 165 B.R. at 833-34. This Court rejects this policy argument. Regardless of Congress's "explicit intent" expressed elsewhere that the United States Trustee Program be "self-funding," the fact is that the priority of bankruptcy claims are established by Sections 507 and 726 of the Bankruptcy Code. If Congress had intended that UST quarterly fees, and other bankruptcy fees under Chapter 123 of title 28, many of which are not related to the United States Trustee Program, be given superpriorities, it could have easily done so. Indeed, the United States Trustee Program was created by the same 1986 amendments to the Bankruptcy Code that failed to grant such a superpriority to bankruptcy fees in Section 726(b). The only plain language of the statute that is relevant here cuts against the policy argument.

Moreover, while it is critical to get the statute's interpretation correct, the Court notes how rare the conflict arising in this case is. For the issue to present itself, the bankruptcy estate must be administratively insolvent and there must be outstanding and unpaid UST quarterly fees

13

from a chapter 11 proceeding. In this case, the issue amounts to no more than several thousand dollars. While the Court's decision here is based on the statutory language, the Court cannot help but observe that the apparent threat to the United States Trustee Program caused by this decision must certainly be *de minimus*. Therefore, the Court concludes that the UST Fee in this case should be awarded junior priority to the Trustee's own Trustee Fee, and that the UST Fee shall be accorded equal priority to the Accountant's Fee. As a result, the Final Report cannot be approved in its current form.

## CONCLUSION

For the reasons set forth above, the Trustee's Final Report will not be approved in its current form. The Trustee must revise her Final Report by according senior priority to her own statutory Trustee Fee and reimbursable expenses. The UST Fee and the Accountant's Fee will be accorded equal priority, but junior to the Trustee's Fee and expenses. The Court will leave to the Trustee the recalculation of her Final Report so that she may take into account any other changes that may have resulted during the passage of time since the original Final Report was filed. The Trustee's amended final report shall be consistent with the legal conclusions of this Memorandum Decision.

The Court will enter a separate order denying approval of the Final Report consistent with this Memorandum Decision. The Order denying approval of the Final Report will not be deemed entered until the separate order has been docketed by the Clerk.

# # #